## McKINNON vs. COOK & ZABRISKIE.

*Twelfth District Court for San Francisco Co., Nov. T.,* 1857.

### TROVER—ADVERSE POSSESSION—ATTORNEY AND CLIENT—FRAUD.

A party sold to another personal property, which at that time was in the possession of third parties, who held and claimed it, adversely to the vendor ; *held,* that the vendee received a valid title, and could maintain an action in his own name for the recovery of this property.

In an action in the nature of *trover,* the plaintiff can recover only the specific property claimed, and must also recover the whole of it, and where an action of this nature was brought by the assignee of a box and its contents, to recover possession of the same—*held,* that if the *title* to any portion of the contents had passed from the assignor to the defendants, previous to the assignment by the former to plaintiff, then the latter could not recover the residue of the property, nor any portion thereof.

In all transactions between attorney and client, the strictest good faith must be observed. To coerce, impose upon, or take an undue advantage of the client's condition, whether arising from over excitement, or otherwise, will avoid any contract, however reasonable, which they may have made.

Attorney and client, under our statute, are at liberty to make any contract with regard to the manner of the compensation of the former which they may deem fit. In all contracts and transactions made and carried on between attorney and client, if the interests of the former appear to have been promoted to the apparent neglect of those of the latter, it raises a presumption of fraud against the attorney, and throws upon him the *onus* of showing that he has acted throughout with perfect good faith, and to the best of his ability, for the interests of the client.

Where property has been obtained by fraud, imposition, or undue influence, the person

from whom it was obtained, or his assignee, can recover it, not only from the original wrong doer, but also from all third parties who claim through him, and who may have had no share in the original tortious procurement of the property.

Action in the nature of *trover*, brought to recover a certain box and its contents, alleged to be six thousand, one hundred dollars in coin of the United States. Defendants put in a general denial. It appeared that the property in question had once belonged to one *Bien*, (who had been arrested on a criminal charge,) that he placed it in the hands of defendants, and subsequently transferred it by bill of sale to the plaintiff. The question presented to the jury was, whether the box and contents were given to defendants, (who were *Bien's* attorneys at his trial, wherein he was convicted,) for safe keeping, as was contended by plaintiff—or whether, as defendants claimed, the money was paid to them by *Bien* as their fee in defending him at his approaching trial. It appeared that a demand of the box and contents had been made on defendants before the sale thereof by *Bien* to plaintiff, and had been refused. The box, with the papers and documents, were, before the commencement of this action, given by defendants to *Bien's* attorney in fact.

*Shafters, Park & Heydenfeldt,* and *G. F. & W. H. Sharp,* for plaintiff.

*Bennett & Stebbins, Thornton, Williams & Thornton, E. Casserly,* and *Janes, Lake & Boyd,* for defendants.

*D. Lake,* argued for defense, that at the time of the pretended sale from *Bien* to the plaintiff, there had already been a demand for the box and contents, and for the return of the money — compliance with which had been refused; there was therefore nothing sold but a lawsuit—a *chose in action* arising in *tort*, and which is not assignable. *Gardner* v. *Adams,* 12 *Wend.,* 297 ; *Hall* v. *Robinson,* 2 *Comst.,* 293 ; *Thurman* v. *Wells,* 18 *Barb.,* 512. It being a conceded fact that the conversion, if any, took place before the transfer to the plaintiff, he cannot maintain this action.

*J. McM. Shafter.* The cases cited do not sustain the position. The case in 18 *Barb.* is essentially the assignment of a *chose in action,* which is not claimed in this case. The case in 12 *Wend.* has been

repeatedly overruled. *Robinson* v. *Weeks*, 1 *Code*, (*N. S.*) 311; 1 *E. D. Smith*, 522, *Brig Sarah Ann*, 2 *Sumner*, 511. In all contracts between attorney and client the strictest good faith should be invariably observed. The courts hold that the attorney is to take care of his client's interest in preference to his own, and will avoid contracts made by him in opposition to this rule. Contracts between those standing in this relation, one peculiarly of trust and confidence, are more readily opened than any other. 1 *Story Eq. Jur.*, § 511, note and authorities. In the case of *Newman* v. *Payne*, 2 *Ves. Jr.*, .199, here approved by judge *Story*, lord *Loughborough* declared *void* a bond given by a client to his attorney, and opened their accounts of many years standing. This decision is again referred to and approved by the whole court in *Starr* v. *Vanderheyden*, (9 *Johns.*, 253,) who say that " the court, from general principles of policy and equity, will always look into the dealings between attorney and client, and guard the latter from any undue consequences resulting from a situation in which he may be supposed to stand unequal."

If there be the least evidence of fraud, imposition, or undue influence, the whole contract is absolutely void. This doctrine is strongly declared by lord chief justice *Wilmot*, in *Bridgeman* v. *Green*, (*Wilm.* 58 ; 2 *Ves.* 627,) which case lord *Eldon* quotes as of governing authority in *Hugenin* v. *Baseley*, (14 *Ves. Jr.*, 273.) In *Whelan* v. *Whelan*, (3 *Cowen*, 537,) *Woodworth, J.*, in regard to this latter case says : (p. 576.) " I fully subscribe to the reasoning of sir *Francis Romilly* in *Hugenin* v. *Baseley*, (p. 287,) that ' if the court sees that any arts or stratagems, or any undue means have been used ; if it sees the least speck of imposition at the bottom ; if there be the least *scintilla* of fraud, this court will and ought to interpose.' " In this opinion chief justice *Savage* and nineteen senators concurred. But it may be said that if any fraud was perpetrated, it was by the defendant, *Zabriskie*, that *Cook* was not a party to it. But he shall not therefore retain the spoils. In the case of *Bridgeman* v. *Green*, just cited, lord chief justice *Wilmot* thus expresses himself : " There is no pretense that *Green's* brother or his wife was party to any imposition, or had any due or undue influence over the plaintiff; but does it follow from thence that they must keep the money ? No ; whoever receives it takes it tainted and infected with

the undue influence and imposition of the person procuring the gift: his partitioning and cantoning it out among his relations and friends will not purify the gift, and protect it against the equity of the person imposed upon. Let the hand receiving it be ever so chaste, yet if it comes through a polluted channel, the obligation of restitution will follow it." This doctrine is not only concurred in by lord *Eldon* in *Hugenin* v. *Baseley*, but is there quoted and incorporated in his opinion, and in *Whelan* v. *Whelan, Woodworth, J.,* again cites it, together with the observation with which lord *Eldon* introduces it, that he "should regret that any doubt could be entertained whether it is not competent to a court of equity to take away from third persons the benefits which they have derived from the fraud, imposition or undue influence of others." The cases in 5 *Johns. Ch.*, 44, and 11 *Paige*, 467, are also in point, and sustain our position. But further than this, the courts, in opposition to the ordinary maxim that "fraud shall not be presumed," have thrown upon the attorney the *onus* of proving that the contract was made fairly and in good faith, without any undue advantage being taken of the situation or condition of the client, and that it was the most advantageous one that could be made for him. He must advise the latter even against himself, and where it appears that his own interests have been promoted instead of those of the client, he is bound to show that the strictest good faith has been preserved. In *Newman* v. *Payne*, the bond given by the plaintiff to his attorney was not considered as even *prima facie* evidence of the existence of the indebtedness which it professed to secure, and the attorney was compelled to prove each item of the amount. In *Gibson* v. *Jeyes*, (6 *Ves. Jr.*, 266,) lord *Eldon* says that if confidence be shown, that circumstance throws upon the one in whom confidence is placed the whole *onus* of the case. In *Chesterfield* v. *Janssen*, lord *Hardwicke* in this regard says, that fraud is a matter of presumption to be rebutted by the other side. And in view of these cases, *Woodworth, J.,* in the case of *Whelan* v. *Whelan*, (3 *Cowen*, 576,) already referred to, recognizes their authority, and supports the same doctrine. "He who bargains in matter of advantage with one putting confidence in him, is bound to show that a reasonable use has been made of that confidence."

But if, again, the contract made between *Bien* and defendants was

of such a nature that their compensation was to be dependent upon the favorable result of the trial of the former, then also the contract was void. *Russell on Crimes*, (*Champerty*.) The § 494 of our *code*, does not extend to these cases. That section being under the head of "*costs*" in an act determining the civil practice, can only be regarded as extending to contracts made between the parties as to what amount of damages should be allowed the successful party to the action as attorney's fees — a case analogous to the provision frequently contained in mortgages, allowing a certain amount to the mortgagee as attorney's fees for conducting the foreclosure thereof.

*H. I Thornton*, for defendants, in reply.

I think that the first ground taken by the opposing counsel is not tenable. "f, at the time of the sale from *Bien* to plaintiff, defendants were in possession of the property, and claimed the title and ownership thereto, adversely to *Bien*, then the latter could not make a valid sale to plaintiff. Property in the adverse hostile possession of another is not the subject of sale.

In *Young* v. *Ferguson*, (1 *Littell*, 298,) the court say, in speaking of the facts of that case, which are precisely similar to that at bar so far as this point is involved, "The merits of *Ferguson's* purchase, it is true, do not appear, but his adverse claim does; and the principle is, that the plaintiff below cannot try these merits in his own name, because the claim and possession of *Ferguson* were adverse, at the date of the sale to *Young*, which precluded him from taking the legal title, so as to enable him to question the same merits." A man can only *sell* his *property*—that which belongs to him. As to what is *property*, the common law is clear. All the decedent's *personal property* vests, by that law, in his executors and administrators; but to enable one filling this trust to maintain an action which was founded on any malfeasance, or a *tort*, or arose *ex delicto*, such as trespass for taking goods, &c., trover, escape, and many other cases of the like kind, where the declaration imputes a *tort*, done either to the person or the property of the decedent, required the passage of the statute, *de bonis asportatis in vita testatoris ;* thus showing that by the common law, all this class of claims and demands was not, nor is it now, personal property. (See *Williams on Executors*, 511.)

*Bien*, at the time of his sale to *McKinnon*, had nothing but a *claim*,

6

a demand or right of action arising in *tort*, as appears from the averments of the complaint on their face. He had not even a *chose in action*, strictly speaking, to transfer. A *chose in action* is such property as, if it had not been assigned, could have been seized by a creditor. What is there here that could have been seized by a creditor? Will it be pretended that one could have attached and have successfully prosecuted in his own name this right of action? But again, a *chose in action* is such property as could be set off to a counter claim. What set off could there be to the right to recover damages for a *tort*, such as exists in this case?

With regard to this right of the assignee to maintain an action in his own name for property held by a person adversely to his assignor, at the time of the assignment, we have a case in point which directly reviews the case to which we have been referred, decided by judge *Story*, in 2 *Sumner*, 206. In *Goodwyn* v. *Lloyd*, (8 *Porter*, 237,) *Ormond, J.*, in delivering the opinion of the court, says: (p. 242.) "It is manifest that the plaintiff in error not only held the slaves adversely to *Harwood Goodwyn*, but also that he *held under color of title*," (which defendants do here; they claimed the contents of the box by purchase, adversely to *Bien*.) * * * "Such being the position of the parties, it is clear that the right of action could not be transferred by a sale of the slaves. The absence of all authority is persuasive to show what the law is. * * * In the case of *Stedman* v. *Riddich*, (4 *Hawke*., 29,) this point was expressly determined. Chief justice *Taylor* says: 'But I know of no authority for the position, that a vendee or assignee may sue for property in his own name which the vendor or assignor, at the time of the sale, could only recover by suit.' * * * So also in the case of *Stogdale* v. *Fergate*, (2 *Marshall*, 136,) the chief justice, giving the opinion of the court, expresses himself thus: * * 'If the plaintiff was not in possession of the hogs at the time of the sale, the right of action could not have been thereby transferred to his vendee, and that he was not in possession is evident.' These cases are conclusive on the point involved in this case."

And then the learned judge goes on to review the opinion of judge *Story* in the case of the brig *Sarah Ann*, (2 *Sumner*, 206.) After stating that the remark in which that judge denies the correctness of the principle for which we contend, "was merely stated by

him as an illustration," judge *Ormond* says : " Although the principle above stated might aid in the solution of that question, and be thus brought in aid of the argument, it was certainly a point not necessary to be determined in the decision of the cause, and therefore not entitled to the weight of an adjudged case. And again, the judge merely states that the effect of a sale under the circumstances supposed, would be to vest the title in the purchaser ; how the right thus acquired could be enforced, is not stated, nor whether it could be enforced by the transferee in a court of law — which is the sole question before the court. * * * Even if, in our opinion, the law was of questionable propriety, we should hesitate long before we would undertake the abrogation of a principle coeval with the very foundations of the common law."

In the case of *Brown* v. *Lipscomb*, (9 *Porter*, 472,) the authority of *Goodwyn* v. *Lloyd* is recognized, and the same doctrine advanced. *Goldthwaite, J.*, delivers the opinion of the court, and says : (p. 477.) " The case therefore presents a different state of facts from that of *Goodwyn* v. *Lloyd*, (8 *Porter*, 237,) in which this court decided that possession taken and held, under color of title, was sufficient to render a subsequent sale by the person having title, inoperative and void. It is clear that the possession of the slave was not with the trustee ; it is also clear, that no right of possession was claimed through him, but the slave was held adversely, and in spite of him. It cannot be denied, we think, by any one, that he had nothing but a right of action, if the taking was not a larceny, as there was a denial, and disclaimer of all right in the trustee." The *bona fides* of the *claim of the adverse party is always a question of fact for a jury, as is also the fact* of the adverse hostile possession. *Brown* v. *Lipscomb*, 9 *Porter*, 472 ; *Jackson* v. *Jay*, 9 *Johns.*, 102 ; *Clapp* v. *Bromaghem*, 9 *Cowen*, 530. In the latter case a new trial was awarded on the ground that the court below at the trial instructed the jury that the possession of the defendant was not adverse and hostile to that of plaintiff.

By § 434 of our *Practice Act*, alluded to by the opposing counsel, defendants and *Bien* are authorized to make any contract they may think fit, and even though the jury should think it unconscionable, it is not their province, nor in their power, to modify or annul it. The

section referred to is positive and broad in its provisions, and does not admit the forced construction which *Mr. Shafter* has claimed for it. With regard to the relations existing between these parties, and its influence upon the contract made by them, I shall cite but one authority, *Rust* v. *Larue*, (4 *Littell*, 411,) wherein *Mills, J.*, delivers the opinion of the court and in the course thereof says : " It is further urged on the part of the appellant that the fee is enormous and unconscientious, and therefore ought not to be enforced by the chancellor. To this we answer, that the prospect of success was very doubtful, and so proved in the end. It is finally contended that the contract was made by those who stood in the relation of counsel and client, and that one made in such an attitude of confidence cannot be supported. It is true such contracts are received with a very jealous eye by the chancellor, and many such have been set aside, and counsel compelled to accept a reasonable compensation for their services. Most of the cases, however, which exist of this nature will be found to be concerning contracts made after counsel was engaged and before the termination of the suit. The question then is, can the contract made at the first employment be subject to the same rule ? We perceive no good reason why it should be. At that time counsel cannot be supposed to have acquired such an ascendency over the client as to inveigle him into a contract dangerous to his interests."

It may be contended that *Bien* was not in a condition to contract. But the evidence shows that *Bien*, even had this been the case, did after that confirm it. Chief justice *Edwards*, in *Taylor* v. *Patrick*, (1 *Bibb.*, 168,) says, under circumstances much more strong than any that can be here contended for : " It is not believed by the court that any particular form of proceeding is necessary to operate as a confirmation ; it appears to us to be fully sufficient if any act is done which clearly indicates the assent of the mind to stand by and perform the contract which had been previously entered into." And certainly this assent can be as conclusively shown by the failure to object, as it can by some act of express confirmation.

One of the instructions given at the request of plaintiff was : " If the jury find that the relation of attorney and client existed between *Bien* and defendants, then it is incumbent upon the latter to show that there was no fraud, imposition or undue influence employed."

NORTON, J., charged the jury. There have been some questions raised and argued to the court during the trial of this cause with respect to plaintiff's right to recover, the admissibility of evidence, &c., with all of which you have no immediate connection. With regard to these, parties have the benefit of their exceptions in case any of the rulings of the court upon these points should, upon more careful and extended consideration by this court or by a higher tribunal, be deemed erroneous.

In this case, from the very nature of the questions which have been raised, and the peculiarly legal character of the points presented, your duty is necessarily very restricted. The action is brought in the form called *trover*, to recover certain specific personal property, or its value. If you find for the plaintiff, you will merely find generally the amount which the testimony has shown to be the value of the property claimed. It appears that it once belonged to *Bien*—that he by a bill of sale transferred it to *McKinnon*—that the latter demanded it of defendants, *Cook* and *Zabriskie*, and that upon this demand, they refused to deliver it to him. If you consider that the proof shows this, and that *Cook* and *Zabriskie* had it in their power and under their control at the time of the demand, then plaintiff has made out a *prima facie* case. Plaintiff has contended, as matter of law, that although *Bien* at the time of this transfer by him, had not the possession of the box in question, or of its contents, and although defendants claimed to hold it adversely to *Bien*, and claimed to be the owners of it, yet that does not affect his right to recover. Upon this point I will charge you that if, at the time of the sale to plaintiff, *Bien* had the title to the box and the *whole* of its contents, the fact that the defendants had the possession and claimed it as their own, will not bar a recovery.

Plaintiff having thus, as I stated, made out a *prima facie* case, defendants then justify their refusal to surrender the money, by alleging that it had, before the sale to plaintiff, become theirs by *purchase*—that is, they claim that it had previously been transferred to them as a compensation for professional services—as a retaining fee. If you find from the evidence that the title to *any portion* of this property had passed to defendants by transfer from *Bien*, before the sale of the whole of it, by him to plaintiffs, then the latter cannot

recover, because the action is for one specific thing, to wit, a box and its contents, and the plaintiff cannot recover something else which he has not claimed.

Plaintiff relies upon *Bien's* testimony to show that, as matter of fact, there never did exist any valid contract by which *Bien* parted with the title to any portion of the contents of the box to defendants— and to show that it was merely deposited with them for safe-keeping. This is the most important of the different questions which have been raised, which properly come before you, and not the court, for consideration and final disposition—whether *Bien*, by any valid contract made with defendants, ever divested himself of the title to any portion of this property, and conveyed the same to defendants. If you find, from all the testimony, that this was actually the case, then defendants are entitled to your verdict. If you are satisfied from the evidence that the order for the box, given by *Bien* to *Cook* and *Zabriskie*, was not given for the purpose of enabling them to obtain possession of it as a deposit and for *Bien's* benefit— but that the intention of the parties at the time was, that they should be thereby enabled to take out their fee — although the remainder was to have been retained in possession by them, as bailees—then also you should find for defendants. This is the question, and the only question submitted to you: was there a contract—and a fair and valid contract— made between *Bien* and defendants previous to the transfer by t he former to plaintiff, by which it was agreed that they were to take their fee from the box and money placed in their hands. If you find affirmatively upon this issue, you must find for the defendants.

In determining this point you can consider the magnitude of the fee by defendants alleged to have been contracted for, but under one point of view only — that is, as a circumstance tending to show whether or not such a contract ever did, as a matter of fact, actually exist. This is not a case where you can take into consideration the magnitude of the fee claimed, as being unconscionable, or that the contract was one to be relieved against, or as a case in which you have a right to declare that the fee is unreasonable, and to diminish or regulate it according to what may be your opinions of a just and reasonable fee under the circumstances. That question does not arise in the case. The plaintiff must recover everything or nothing; you cannot give

them a partial verdict and deduct what you think defendants ought, in right to receive as compensation for the services which it has been proven that they did actually render. You must only take the magnitude of this fee claimed as a circumstance or *indicium* tending to show the existence of a contract.

But this contract, whatever may have been its terms, must have been a fair one, and if you find that when it was made, there was any undue advantage taken of *Bien's* condition, or that any undue influence, imposition, or fraud was practised upon him, or that he was at the time laboring under such a state of excitement as would disable him from a due and proper use of his reasoning faculties,—then in any and every such case, any contract which might have been made with him, however just and reasonable it may have been, would be absolutely void, and although it should have been of the character which I have heretofore mentioned, that is that defendants were to take their fee from the box and money placed in their hands,—such a contract, made under such circumstances, would not divest *Bien* of the title to any portion of that property and transfer it to defendants, or bar plaintiff's right to recover. If you should be satisfied that a contract was made, that *Bien's* mental condition was not such as to disable him from entering into a valid and binding contract, that no fraud imposition or undue influence was exercised or employed, then you have no power to set such a contract so made aside on any grounds whatever. Under our statute those standing in the relation of attorney and client are at liberty to make any contract they may see fit, but this neither abrogates nor alters the common law rule of the necessity for the observance of perfect good faith on the part of him who stands in the peculiarly confidential relation of counsel,—and under our system, as well as under the common law, the employment of any threats or misrepresentations, or fraud by the attorney, to prevent or influence the free exercise of the client's judgment, would avoid any contract however reasonable, that might have been made.

You are at liberty to find against one and in favor of the other defendant, and if so, you will express the same by your verdict. If you should find that *Cook* did not personally make any contract with *Bien*, —that it was made by *Zabriskie* on behalf of himself and *Cook*, but that *Zabriskie* employed any of the unfair means to which I have

referred,—the fact that *Cook* had no hand in the matter, is no reason why he should retain the money, obtained in pursuance of such a contract. and will not bar a recovery against him. But, however your verdict may be as to the persons of the defendants, it must be for the entire box and contents, and unless these were originally deposited by *Bien* in the hands of defendants as bailees, your verdict must be in their favor. The declarations of *Zabriskie* which have been proven to you, with regard to the nature and terms of this contract, are not evidence against *Cook,* unless there was but one common contract made by both *Cook* and *Zabriskie* with *Bien,*—but if on the contrary you should be satisfied that each of the defendants made his separate contract with *Bien,* then *Zabriskie's* declarations are evidence only against himself.

If you should find for plaintiff, and should conclude that defendants came jointly into possession of the property, and that, at the time of the demand by *McKinnon,* it was under their joint control, you will find against both.

The jury found generally for the defendants.